UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Derrick Scott,

      Plaintiff,

    v.

M. Chastain; Fernando Castillo; David
Szoke; B. A. Bledsoe; Lisa Hollingsworth;
Brian Joe Davis; Mr. Kenneth Sample;
James Edmond, a/k/a Jim Edmond;
Dr. Paul Harvey; Tom Nelson; Scott Fisher;
Lanett Ritter; and William Bill Earl,

      Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 09-3170 ADM/JJK

_____

Derrick Scott, pro se.

David W. Fuller Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of
Defendants.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Derrick Scott's ("Scott") Objections [Docket No. 41] to Magistrate Judge Jeffrey J. Keyes's Report and Recommendation ("R&R") [Docket No. 40] that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 12] be granted. Scott, a prisoner in the Federal Correctional Institution in Sandstone ("FCI-Sandstone"), initiated this action claiming deprivations of his rights under the Eighth Amendment to the United States Constitution.[1] For

---

[1] The Amended Complaint [Docket No. 27] pleads claims under 42 U.S.C. §1983. However, Section 1983 is not applicable to suits against federal employees, and the action is therefore construed as an action under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 433 U.S. 388 (1971).

the reasons set forth below, Scott's Objections are overruled and the R&R is adopted. The procedural and factual background, described in the R&R, is incorporated by reference.

## II. DISCUSSION

### A. Standard of Review

A district court must make an independent, de novo review of those portions of an R&R to which a party objects, and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. LR 72.2(b). Scott has not objected to Magistrate Judge Keyes's finding of a lack of personal jurisdiction over Defendants M. Chastain, Fernando Castillo, David Szoke, B. A. Bledsoe, Lisa Hollingsworth, and Brian Joe Davis (collectively, "the USP-Marion Defendants"). Accordingly, only the claims against the remaining individuals, Defendants Kenneth Sample, James Edmond, Paul Harvey, Tom Nelson,[2] Scott Fisher, Lanett Ritter, and William Bill Earl (collectively, "the FCI-Sandstone Defendants"), are at issue.

### B. Eighth Amendment Claims

Judge Keyes recommended that the FCI-Sandstone Defendants are entitled to summary judgment on Scott's claims of deliberate indifference in violation of the Eighth Amendment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec.

---

[2] Tom Nelson is a private surgeon who was consulted by FCI-Sandstone personnel. Am. Compl. ¶ 45. As a private actor, Scott cannot state a Bivens claim against Nelson. See Sinclair v. Hawke, 314 F.3d 934, 940 (8th Cir. 2003) (stating that Bivens actions do not extend to claims against private government contractors).

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban on cruel and unusual punishments." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009). A prima facie case of constitutionally inadequate medical care requires a showing that (1) the prisoner suffered objectively serious medical needs and (2) prison officials actually knew of but deliberately disregarded those needs. Nelson v. Shuffman, 603 F.3d 439, 448 (8th Cir. 2010). The first prong tests whether the medical need is one that is obvious to a layperson or supported by medical evidence. See Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995). The second prong requires that the prison officials had a "sufficiently culpable state of mind," meaning that they recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk. Krout, 583 F.3d at 567.

Scott objects to the R&R's determination that the record fails to show that the FCI-Sandstone Defendants exhibited deliberate indifference in their: (1) treatment of his osteochondroma; (2) response to his alleged hip pain; (3) prescribed treatment of his hemorrhoids; and (4) eighty-day delay in seeing him after arriving at FCI-Sandstone.[3]

**1.    Osteochondroma**

Scott contends that Judge Keyes erred when he determined that the FCI-Sandstone

---

[3] Scott also contends Judge Keyes failed to adhere to the doctrine of stare decisis. Under the doctrine of stare decisis, "a decision is binding in a later case where the issues and the facts are the same or substantially the same[;] it is not conclusive in a later case where the facts are different, except where they present an even stronger case than the facts in the former decision." 21 C.J.S. Courts § 221 (2010) (footnotes omitted). While the issues and facts of this case perhaps bear some resemblance to issues and facts involved in cases cited by Scott, they are, as set forth below, sufficiently distinguishable and support the decision reached by Judge Keyes.

Defendants' treatment of his osteochondroma exhibited deliberate indifference. The Court need not decide whether Scott's osteochondroma qualifies as a serious medical need because, even if it did, the record fails to support a finding on the second prong of Scott's prima facie case—that the officials had a sufficiently culpable state of mind. On the contrary, the FCI-Sandstone Defendants have vigilantly monitored Scott's condition to ensure it has not affected his health. The record shows that Scott has received two CT scans, an MRI, an X-ray, and a bone scan to evaluate the status of the osteochondroma and whether it is causing the alleged hip pain. Scott Aff. [Docket No. 30], Attach. 1 at 11, Attach. 3 at 5, 7, 8, 11, 13-14. In addition, the results of these tests have been reviewed by outside physicians. Id., Attach. 3 at 6-8. On each occasion, the reviewing medical practioner has either recommended further testing or determined that the osteochondroma is benign.[4] Id., Attach. 1 at 7, 10, 11, and 14, Attach. 3 at 5. In short, the record fails to identify a triable issue on whether the FCI-Sandstone Defendants have ignored or been deliberately indifferent to Scott's osteochondroma; consequently, this aspect of his deliberate indifference claim fails.

2.  **Hip pain**

Scott claims that the FCI-Sandstone Defendants' inability to abate his ongoing hip pain demonstrates deliberate indifference to his serious medical need. Assuming Scott's hip pain constitutes an objectively serious medical need, Scott has failed to show that the prison officials have deliberately disregarded that need. Medical personnel at FCI-Sandstone have treated Scott

---

[4] As Judge Keyes noted, "[Scott's] own submission of a printout from a University of Virginia Health System webpage relating to osteochondroma indicates that 'if there is no sign of bone weakening or increased overgrowth, observation only may be suggested.'" R&R at 22 (citing Scott Aff., Attach. 3 at 3).

on numerous occasions. As noted above, Scott has undergone a variety of tests, scans, and examinations to determine the source of his hip pain. Scott also has been prescribed Ibuprofen and a one-time cortisone shot.

Scott argues that Judge Keyes disregarded evidence showing that two FCI-Sandstone medical employees knew that the prescribed treatments did little to abate the pain. Scott contends that despite this knowledge, the FCI-Sandstone Defendants failed to take further action, demonstrating deliberate indifference to his hip pain. However, it is unclear what more the FCI-Sandstone Defendants could have done to address Scott's pain, given the number of tests Scott had already undergone. For his part, Scott has not directed the Court to any alternate, more effective course of treatment that should have been considered and implemented. Indeed, as Judge Keyes noted, there is no evidence that Scott has "requested and been denied any non-surgical treatment for his repeated complaints of hip pain," except to have the bone growth removed. R&R at 22. Scott's request to have the bone growth removed was denied on July 22, 2009, because FCI-Sandstone personnel concluded that the osteochondroma was not the "current pain generator." Scott Aff., Attach. 3 at 7, Attach. 1 at 32. Scott's disagreement with the FCI-Sandstone Defendants as to the course of treatment or the source of his pain cannot, without more, serve as the basis for a deliberate indifference claim. Estate of Rosenberg, 56 F.3d 35, 37 (8th Cir. 1995) ("[A prisoner's] mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). Because Scott has failed to show that the FCI-Sandstone Defendants were deliberately indifferent to his hip pain, this aspect of his claim fails as a matter of law.

### 3. Hemorrhoids

Scott objects to Judge Keyes's conclusion that "[t]his is not a situation in which it appears that FCI-Sandstone staff was aware that Plaintiff had any adverse reaction to the medication he had been prescribed at USP-Marion, yet continued to provide the same treatment without considering an alternative." R&R at 20. Scott claims, to the contrary, that he saw Edmond, a Mid-Level Practitioner at FCI-Sandstone, on at least three separate occasions for pain he was experiencing as a result of his hemorrhoids and was told he would be prescribed Dibuciane cream and Hydrocortisone Acetate anal suppositories.[5] Objections at 3. Scott claims in his Objections that he responded that he had previously been prescribed these medications while at USP-Marion and they caused him "bad diarrhea" along with other unspecified "injuries," yet Edmond prescribed the medications anyway. Id.

The record does not support Scott's allegation that Edmond knew of Scott's adverse reaction to the medications. According to Edmond, Scott never mentioned any problems with his hemorrhoid medication. Edmond Decl. ¶ 2. Edmond's notes from his visits with Scott contain no reference to diarrhea or any other adverse reaction to these medications. Scott Aff., Attach. 10-11.[6] While Scott claims that he "put [this allegation] in writing through the grievance procedures," none of the documents submitted by Scott contain any reference to diarrhea or his conversations with Edmond. Objections at 3. Similarly, no reference to diarrhea is found in the

---

[5] According to Scott, the dates of these conversations were: November 21, 2008, December 12, 2008, and March 24, 2009.

[6] Edmond's notes from one of the visits (March 24, 2009) were not submitted by Scott and are not found in the record.

Bureau of Prison's records of the grievance forms submitted by Scott.[7] Kinyon Decl., Attachment 2. Because Scott has failed to present any evidence showing that Edmond was aware of his previous adverse reaction to the same course of treatment Edmond prescribed, there is a failure of proof on the second part of Scott's deliberate indifference claim as it relates to Edmond's prescription of the hemorrhoid medication. Accordingly, this aspect of Scott's claim fails as a matter of law.

### 4. Delay in Treatment

Lastly, Scott argues that the eighty-day delay in being seen by medical staff after arriving at FCI-Sandstone constitutes deliberate indifference. However, as the R&R correctly notes, an inmate must "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" R&R at 23 (quoting Coleman v. Rahij, 114 F.3d 778, 784 (8th Cir. 1997) (emphasis added). Scott has not shown that the eighty-day delay has adversely affected his osteochondroma or his hemorrhoids. While Scott alleges he is in pain, he has not been able to identify or verify the source of his alleged hip pain. Cf. King v. Dingle, No. 08-5922, 2010 WL 924383, at *26 (D. Minn. Mar. 11, 2010) ("[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims against them.").

Each of the cases cited by Scott in support of his claim involves a situation in which the delay had a verifiable, detrimental effect on the prisoner's health. See Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993) (serious head injury resulting in brain swelling); Johnson v.

---

[7] Given the failure to include this specific complaint regarding Edmond's treatment decisions in the prison's grievance forms, Scott also has failed to exhaust all available administrative remedies. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted.").

Lockhart, 941 F.2d 705, (8th Cir. 1991) (surgery on a life-threatening hernia delayed for ten months); Degidio v. Pung, 920 F.2d 525, 528 (8th Cir. 1990) (prison officials' slow response to a widespread tuberculosis outbreak in the prison); Toombs v. Bell, 798 F.2d 297, 299 (8th Cir. 1986) (prisoner's complaints of pain ignored for three weeks until he passed out and it was discovered he had gallstones); Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981) (broken hand causing a detainee pain for an entire weekend). Because Scott has not shown that the delay in treatment has adversely affected his health, his deliberate indifference claim based on the delay in treatment fails as a matter of law.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Docket No. 41] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 40] is **ADOPTED**;

3. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 1s] is **GRANTED**; and

4. Plaintiff's Amended Complaint [Docket No. 27] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 30, 2010.